UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JIMMY E. MARSHALL,

    Plaintiff,

v.

WAYNE COUNTY and WAYNE
COUNTY DEPARTMENT OF
PUBLIC SERVICES,

    Defendants.

                                /

Case No. 2:19-cv-12515

HONORABLE STEPHEN J. MURPHY, III

**OPINION AND ORDER GRANTING
DEFENDANTS' SUMMARY JUDGMENT MOTION [49]
AND DENYING PLAINTIFF'S SUMMARY JUDGMENT MOTION [48]**

Only two claims remain in the case. ECF 40, PgID 646. Both claims relate to Plaintiff Jimmy Marshall's five-day suspension from employment. *Id.* The first claim is against Defendant Duane Russow[1] in his individual capacity under 42 U.S.C. § 1983 for due process and equal protection violations. *Id.* The second claim is a Title VII disparate treatment claim against Wayne County. *Id.* The parties cross-moved for summary judgment on the claims. ECF 48; 49.[2] For the following reasons, the Court will grant Defendants' motion and deny Plaintiff's motion.

---

[1] Because the docket misspells Defendant Russow's name, the Court will order the Clerk of the Court to amend it.

[2] Based on the parties' briefing, the Court will resolve the motions on the briefs without a hearing. *See* Fed R. Civ. P. 78(b); E.D. Mich. L.R. 7.1(f)(2).

1

## BACKGROUND

Plaintiff worked as a pump station mechanic for Wayne County's Department of Public Services. ECF 49-4, PgID 833. Defendant Russow was Plaintiff's supervisor. *Id.* at 833–34.

On February 25, 2018, Plaintiff worked the midnight and day shifts. ECF 50-2, PgID 1149. Plaintiff's shift included "sweep[ing] and mopp[ing] [the] entire operating room floor, stairs[,] and balconies." ECF 49-2, PgID 819. Plaintiff failed to complete those duties during his shift. ECF 49-4, PgID 865.

Defendant Russow noticed the unfinished task and wrote on a bulletin board, "Jimmy, Please mop floor that you missed on Sunday. Thanks Duane." ECF 49-3, PgID 821; ECF 50-2, PgID 1150–51. Plaintiff saw the message and spoke with Defendant Russow. ECF 49-4, PgID 866–67.[3] When the floors were still not mopped several days later, Defendant Russow talked to his supervisor about how to handle Plaintiff's failure to complete his duties. ECF 50-2, PgID 1159–60.

The employee handbook classifies insubordination as a level three infraction. *Id.* at 1175; *see also* ECF 49-8, PgID 1072. Insubordination is the "[f]ailure to obey a direct order from a supervisor." ECF 49-8, PgID 1072. A first-time offender for insubordination receives a five-day suspension. ECF 50-2, PgID 1176; *see also* ECF 49-8, PgID 1071. Defendant Russow understood that the failure to follow the white

---

[3] Plaintiff also explained that Defendant Russow did not orally ask him to perform the task. ECF 49-4, PgID 902.

2

board instruction to sweep and mop was insubordinate, and it was Plaintiff's first offense. ECF 50-2, PgID 1175–76.

Defendant Russow then wrote up Plaintiff for insubordination and unsatisfactory performance because Plaintiff did not sweep and mop the floor as Russow ordered. *Id.* at 1132, 1160–61, 1176. Plaintiff's union representative first told Plaintiff that he was being written up for not mopping the floor. ECF 49-4, PgID 899.

Defendant Russow later met with Plaintiff and the union representative. *Id.* at 893; ECF 50-2, PgID 1160–62. The meeting lasted ten minutes and Plaintiff was presented with the documents attached to his discipline form that supported the write-up. ECF 50-2, PgID 1161–62; *see* ECF 49-5, PgID 1040. Defendant Russow asked Plaintiff to explain his conduct, but Plaintiff remained silent. ECF 50-2, PgID 1163. Plaintiff testified that although he had the opportunity to sign the form, he "did not read the form," "did not sign the form," and that "no one explained what was on the form." ECF 49-4, PgID 893–94, 903. Defendant Russow and the union representative signed the form, but the employee's signature line stated only "[r]efuse to sign." ECF 49-5, PgID 1040. Plaintiff was then suspended five days without pay. ECF 50-2, PgID 1104; *see also* ECF 49-5, PgID 1040.

In general, an employee can file a grievance after he has been disciplined. ECF 50-2, PgID 1170. Plaintiff did not file a grievance after his five-day suspension. *Id.* at 1171.

Last, Plaintiff worked with a white employee, Michael Crossman, who also allegedly failed to mop floors but was not disciplined for the conduct. ECF 49-4, PgID

3

873–74, 900–01. Defendant Russow explained that he gave all his subordinates a warning before he instituted any disciplinary proceeding. ECF 50-2, PgID 1167–68. As for Crossman specifically, Defendant Russow did not discipline him for failing to mop because after Crossman was notified that the task was unfinished, Crossman promptly completed it. *Id.* at 1168.

## LEGAL STANDARD

The Court must grant a summary judgment motion "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A moving party must point to specific portions of the record that "it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party may not simply rest on the pleadings but must present "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis omitted) (quoting Fed. R. Civ. P. 56(e)).

A fact is material if proof of that fact would establish or refute an essential element of the cause of action or defense. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). A dispute over material facts is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When considering a summary judgment motion, the Court must view the facts and draw all reasonable inferences "in the light most

4

favorable to the non-moving party." *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987) (citations omitted).

## DISCUSSION

The Court will first grant summary judgment for Defendant Russow on the § 1983 claims.[4] After, the Court will grant summary judgment to Wayne County on the Title VII claim.

I. <u>Section 1983 Claim for Due Process Violation</u>

Section 1983 "prohibit[s] state employees from violating a person's constitutional rights" including those guaranteed by the Fourteenth Amendment's Due Process Clause. *Green v. City of Southfield*, 925 F.3d 281, 284 (6th Cir. 2019). "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the . . . Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Id.* at 333 (internal quotation marks and quotations omitted).

"To establish a procedural due process violation, Plaintiffs must show (1) that they have been deprived of a cognizable liberty [or property] interest, and (2) that such deprivation occurred without adequate procedural protections." *Schulkers v.*

---

[4] Defendant Russow's brief never asserted qualified immunity as an affirmative defense. *See* ECF 49; *see also* ECF 36, PgID 578–81 (affirmative defenses listed in the answer to the amended complaint). Thus, the Court need only examine whether a genuine dispute exists about whether Defendant Russow violated Plaintiff's due process and equal protection rights.

5

*Kammer*, 955 F.3d 520, 545 (6th Cir. 2020) (citations omitted). Defendant Russow conceded that Plaintiff's five-day suspension was a cognizable property interest. ECF 49, PgID 810–11. Thus, the only contested issue is the adequacy of the procedural protections given to Plaintiff.

Defendant claimed that all the pre-suspension procedures complied with *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 545 (1985). ECF 49, PgID 811. *Loudermill* held "that a *tenured* public employee to whom a *post-termination* hearing is available is entitled to 'oral or written notice of the charges against him, an explanation of the employer's evidence, and the opportunity to present his side of the story.'" *Gillard v. Norris*, 857 F.2d 1095, 1099 (6th Cir. 1988) (emphasis added) (citing *Loudermill*, 470 U.S. at 546). A pre-deprivation hearing "need not be a full evidentiary hearing with witnesses and a neutral decision maker." *Duchesne v. Williams*, 849 F.2d 1004, 1005 (6th Cir. 1988) (quotation omitted). Based on *Loudermill*, an employee must only have "a right of reply before the official responsible for the discharge." *Id.*

But *Loudermill* applies only for "terminations by a public employer, [] not necessarily for suspensions." *Baird v. Hamilton Cnty. Dep't of Job & Fam. Servs.*, 809 F. App'x 308, 311 (6th Cir. 2020) (internal citations omitted).[5] It follows that if Defendant Russow complied with *Loudermill*, then Plaintiff would have received *more* process than the Constitution requires. *See Gillard*, 857 F.2d at 1099

---

[5] No party has briefed the *Mathews* balancing test to determine what due process protections were required before suspending Plaintiff. *See* 424 U.S. at 335.

6

("[Plaintiff's] three-day routine disciplinary suspension without pay is less severe than that of the terminated employee in *Loudermill*. Therefore, due process requires pre-deprivation proceedings no more formal and extensive than those required in *Loudermill*."); *see also Gilbert v. Homar*, 520 U.S. 924, 934–35 (1997) ("[I]n the case of a suspension there will be ample opportunity to invoke discretion later—and a short delay actually benefits the employee by allowing state officials to obtain more accurate information.").

At any rate, no genuine dispute of fact exists over whether Defendant flouted *Loudermill*'s requirements. Plaintiff learned about the discipline against him and the documents supporting it before his suspension. ECF 49-4, PgID 893; ECF 49-5, PgID 1040; ECF 50-2, PgID 1161–62; *see Kuhn v. Washtenaw Cnty.*, 709 F.3d 612, 621 (6th Cir. 2013) ("[A] plaintiff is deemed to have received sufficient notice when he has 'at least the sense of the charges against him.'") (quoting *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 409 (6th Cir. 1992)). To that end, Plaintiff met with Defendant Russow and his union representative, but Plaintiff refused to talk about the discipline report. ECF 50-2, PgID 1160–63.

Plaintiff's only challenge to the due process claim is jumbled. He appeared to argue that he never received notice from Defendant Russow about the alleged insubordination once it occurred. ECF 48, PgID 695–97; ECF 51, PgID 1197–98; ECF 52, PgID 1203–04.[6] But the argument is irrelevant to whether Plaintiff received

---

[6] Plaintiff never contended that the pre-suspension meeting was "a sham hearing with a predetermined outcome." *See Moore v. City of Cleveland*, 812 F. App'x 299, 304 (6th Cir. 2020) (internal quotation marks removed).

7

adequate procedural due process protections. *See Duchesne*, 849 F.2d at 1008 ("The limited, 'right-of-reply' pretermination hearing, as defined in *Loudermill*, is designed 'to invoke the employer's discretion,' his sense of fairness and mutual respect, his willingness to reconsider."). Indeed, "[s]uch a procedure serves as an 'initial check against mistaken decisions.'" *Kuhn*, 709 F.3d at 620 (quoting *Loudermill*, 470 U.S. at 545).

To be sure, no procedure in the pre-suspension meeting or in the post-suspension grievance policy prevented Plaintiff from asserting that he was not insubordinate because he never received Defendant Russow's instruction. Rather, Plaintiff refused to speak at the meeting, ECF 50-2, PgID 1163, and he never alleged that the post-suspension grievance procedure—that he did not pursue—was so meager that it violated his procedural due process rights. *See Farhat v. Jopke*, 370 F.3d 580, 596 (6th Cir. 2004) ("[G]rievance procedures provided by a collective bargaining agreement can satisfy a plaintiff's entitlement to post-deprivation due process.") (quotation omitted). In the end, the undisputed facts show that Defendant Russow did not violate Plaintiff's procedural due process rights.

II.  Section 1983 Claim for Equal Protection Violation

Section 1983 "prohibit[s] state employees from violating a person's constitutional rights" including those guaranteed by the Fourteenth Amendment's Equal Protection Clause. *Green*, 925 F.3d at 284. The clause "prevents official conduct discriminating on the basis of race." *Coal. to Def. Affirmative Action v. Granholm*, 473 F.3d 237, 248 (6th Cir. 2006) (internal quotation marks and quotations omitted).

8

Courts analyze equal protection claims under the *McDonnell Douglas* burden shifting framework.[7] *Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 566–67 (6th Cir. 2004) (quotation omitted).

For an equal protection violation, a plaintiff must first show: "(1) he was a member of a protected class; (2) he was subject to an adverse employment action; (3) he was qualified for the job; and (4) for the same or similar conduct, he was treated differently from similarly situated non-minority employees." *Perry v. McGinnis*, 209 F.3d 597, 601 (6th Cir. 2000) (cleaned up). Defendants contested only the last element. ECF 49, PgID 813.

An employee is "'similarly-situated' in the disciplinary context," when another employee "dealt with the same supervisor, [has] been subject to the same standards and [has] engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Perry*, 209 F.3d at 601 (quotation omitted). The Court "should not demand exact correlation," between the two employees, "but should instead seek relevant similarity." *Id.* Defendants argued only that Plaintiff and the similarly situated employee, Crossman, did not "engage[] in the same conduct." ECF 49, PgID 814.

In short, Crossman and Plaintiff were not similarly situated. Although both failed to mop and sweep the floors, when Crossman was warned to complete the task,

---

[7] Plaintiff and Defendants both address the claim through the *McDonnell Douglas* framework rather than a direct evidence framework. ECF 48, PgID 687–94; ECF 49, PgID 808–09. The Court will do the same.

9

he complied; when Plaintiff received the warning (the bulletin board), he did not. ECF 49-3, PgID 821; ECF 50-2, PgID 1150–51, 1159–60, 1167–68. Plaintiff was therefore written up for insubordination—the "[f]ailure to obey a direct order from a supervisor." ECF 49-8, PgID 1072; *see* ECF 49-5, PgID 1040. Because Crossman was not insubordinate, he and Plaintiff are not similarly situated, and Plaintiff cannot establish a prima facie case for an equal protection violation.

Even if Plaintiff and Crossman were similarly situated, Defendants have shown a legitimate, nondiscriminatory explanation for the suspension—Plaintiff flouted a direct instruction from his supervisor. *See Clay v. United Parcel Serv., Inc.*, 501 F.3d 695, 703 (6th Cir. 2007). Because "[f]ailure to obey a direct order from a supervisor" is insubordination, Plaintiff could be suspended for it. ECF 49-8, PgID 1071–72; ECF 50-2, PgID 1176.

Still, Plaintiff claimed that the insubordination reason was pretextual. ECF 48, PgID 688–94. For pretext, Plaintiff must show "that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Johnson v. Kroger Co.*, 319 F.3d 858, 866 (6th Cir. 2003) (quotation omitted).

Plaintiff first reasoned that the insubordination finding lacked any basis in fact because he never received a direct order from Defendant Russow. ECF 48, PgID 690–91. As Plaintiff put it, the message on the bulletin board, ECF 49-3, PgID 821, even though he saw it, was not a direct order because Defendant Russow never spoke to him. ECF 48, PgID 690–91. But no reasonable jury would find the fact in genuine

dispute. When a supervisor posts a public message to a subordinate telling the subordinate to complete a task, a reasonable jury would conclude only that the message was a direct order. *See Direct*, Black's Law Dictionary (11th ed. 2019) ("To instruct (someone) with authority.").

Plaintiff also believed that he should have, at most, been given a verbal warning because he had a legitimate excuse for not mopping. ECF 48, PgID 691–93. But Plaintiff never told Defendant Russow about his excuse before he was suspended; he remained silent despite having his union representative next to him. ECF 50-2, PgID 1163. As a result, Defendant Russow never learned about the excuse before he suspended Plaintiff. For that reason, Plaintiff cannot show a genuine dispute about Defendant Russow's actual motivation.

Plaintiff's last argument about pretext merely renews the argument that Crossman and Plaintiff were similarly situated, and that Defendant Russow treated Crossman better than Plaintiff. ECF 48, PgID 693–94. Because the Court has already rejected the argument, it cannot save the equal protection claim. The Court will therefore grant summary judgment on the § 1983 claims to Defendant Russow and deny Plaintiff summary judgment.

III. Title VII Claim

A Title VII disparate treatment claim and an Equal Protection claim under 42 U.S.C. § 1983 share the same prima facie elements. *Perry*, 209 F.3d at 601. Because Plaintiff could not show that he was treated differently from a similarly situated non-minority employee, the Title VII claim fails. As a result, the Court will grant

11

Defendants' summary judgment motion and deny Plaintiff's summary judgment motion.

## CONCLUSION

The Court rarely discusses attorney conduct. But Messrs. Harrison's and Emanuel's conduct during the litigation is disheartening. For one, the deposition transcripts are littered with unnecessary objections and bickering. The constant fighting not only wasted the deponents' time, but it also wasted the Court's time when the Court reviewed the transcripts. For another, the briefing in the present case fell below the minimum required for the Court to decide disputed issues. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.") (omission in original) (quotation omitted). Going forward, the Court implores the lawyers here to act more collegially and with more diligence.

## ORDER

**WHEREFORE**, it is hereby **ORDERED** that Defendants' summary judgment motion [49] is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's summary judgment motion [48] is **DENIED**.

**IT IS FURTHER ORDERED** that the Clerk of the Court must **AMEND** Defendant Duane Rosseau's name on the docket to "Duane Russow."

This is a final order that closes the case.

**SO ORDERED.**

s/ Stephen J. Murphy, III  
STEPHEN J. MURPHY, III  
United S1tates District Judge

Dated: May 10, 2022

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on May 10, 2022, by electronic and/or ordinary mail.

s/ David P. Parker  
Case Manager